**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARIENE CADENA; ANDREW GONZALES, on behalf of themselves and all others similarly situated, | No. 23-15820 |
| | D.C. No. 2:18-cv-00233-APG-DJA |
| *Plaintiffs-Appellants*, | |
| v. | |
| CUSTOMER CONNEXX LLC; JANONE, INC., | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted April 12, 2024
Pasadena, California

Filed July 10, 2024

Before: Marsha S. Berzon and Salvador Mendoza, Jr.,
Circuit Judges, and Michael T. Liburdi,[*] District Judge.

Opinion by Judge Berzon

---

[*] The Honorable Michael T. Liburdi, United States District Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Labor Law

The panel reversed the district court's summary judgment in favor of Customer Connexx LLC, the defendant in an action brought by a certified collective of call-center workers under the Fair Labor Standards Act for failing to pay overtime wages, and remanded for further proceedings.

The workers alleged that they were entitled to overtime wages for time spent booting up and shutting down their computers each day. The district court held that the time was not compensable under longstanding precedents establishing that the Fair Labor Standards Act does not require an employer to pay wages for work performed before or after scheduled work hours where the amount of time in question is "de minimis."

The panel disagreed with the workers' argument that the de minimis doctrine is no longer good law after *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014), which held that the doctrine was not applicable to 29 U.S.C. § 203(o), a provision of the Fair Labor Standards Act concerning time spent changing clothes or washing. The panel concluded that *Sandifer* did not disturb this court's applicable case law on the de minimis doctrine in the context of a Fair Labor Standards Act claim under 29 U.S.C. § 207. Accordingly, the doctrine remains applicable to workers' claims for overtime wages under § 207.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held, however, that triable issues of material fact remained as to whether the time here was de minimis. The panel concluded that summary judgment also was improper on the alternative ground that there was no dispute of material fact as to whether, under Connexx's policies, it was possible for workers to be compensated for boot up and shut down work outside the shift hours, even though such work was necessary to boot up and shut down the computers at the required times.

**COUNSEL**

Joshua D. Buck (argued), Mark R. Thierman, and Leah L. Jones, Thierman Buck LLP, Reno, Nevada, for Plaintiffs-Appellants.

William R. Gignilliat, IV, (argued), Jackson Lewis PC, Greenville, South Carolina; Paul T. Trimmer, Jackson Lewis PC, Las Vegas, Nevada; Veronica T. Hunter, Jackson Lewis PC, Houston, Texas; for Defendants-Appellees.

## OPINION

BERZON, Circuit Judge:

Plaintiffs, a certified collective of call-center workers, alleged that their employer, defendant Customer Connexx LLC ("Connexx"), violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to pay overtime wages for time spent booting up and shutting down their computers each day. In a previous appeal, we reversed the district court's grant of summary judgment to Customer Connexx and remanded for further proceedings. *See Cadena v. Customer Connexx LLC* (*Cadena I*), 51 F.4th 831, 834 (9th Cir. 2022). On remand, the district court again granted summary judgment to Customer Connexx, holding the time not compensable under longstanding precedents establishing that the FLSA does not require an employer to pay wages for work performed before or after scheduled work hours where the amount of time in question is "de minimis." *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946); *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984).

On appeal, plaintiffs argue that the de minimis doctrine is no longer good law after *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014). We disagree. The de minimis doctrine remains applicable to workers' claims for overtime wages under 29 U.S.C. § 207. Triable issues of material fact remain, however, as to whether the time here was de minimis. We reverse the district court's judgment and remand for further proceedings.

## BACKGROUND

### I. Facts

Customer Connexx, a wholly owned subsidiary of defendant JanOne, Inc. (collectively "Connexx"), operates a call center in Las Vegas that assists with customer service and scheduling functions for an appliance recycling business. Plaintiffs worked as customer service representatives or "call center agents," who primarily spent time on the telephone with customers; "leads," who supervised the call center agents; and quality assurance agents, who monitored calls of the call center agents, among other duties. The workers were required to use a computer timekeeping software program to clock in and out for each shift. Connexx instructed its workers to clock in before opening any other computer program necessary to perform their call center roles, and its policies prohibited off-the-clock work.

To clock in using the timekeeping software, workers needed a functioning computer. So the steps for clocking in generally included turning on or awakening the computer, logging in to the computer by typing in a user name and/or password, and clicking on a link to the timekeeping system to open the program and clock in.

Workers at the call center did not have permanently assigned workstations. Instead, workers went to computer workstations each shift on a first come, first served basis. According to the workers' deposition testimony, some of the computers were "old and slow"; others were faster. Workers sometimes had to try different work-stations before finding a workable computer.

Connexx required its call center workers to be clocked in and ready to accept calls at the scheduled start time of each shift. Because it took additional time to engage a computer before it was possible to clock in, the workers had to arrive at the call center some amount of time before the scheduled start time of each shift. Company policy prohibited the workers from clocking in seven or more minutes before the scheduled start time of a shift. Compensable work time was computed by rounding to the nearest quarter-hour.

At the end of each shift, workers generally finished any ongoing call, closed out of non-timekeeping programs that were open on the computer, and then clocked out. After clocking out, the workers had to log off the computer or turn it off.

The parties dispute how long it generally took workers to boot up and boot down the computers at the beginning and end of each shift. They also dispute whether Connexx required the workers to wait until the computer was fully powered down before leaving for the day.

In some circumstances, Connexx would allow a worker to request adjustment of the time records generated by the timekeeping software, such as when computer delays prevented a worker from clocking in at the scheduled start time of a shift. The parties dispute whether supervisors were permitted to adjust time records to reflect a worker's actual start time if it preceded the shift start time, rather than to reflect only the scheduled start time for the shift.

## II.  Procedural History

Two named plaintiffs, Cariene Cadena and Andrew Gonzales, filed a collective action complaint alleging that Connexx owed its call center workers unpaid overtime

wages under the FLSA for booting up and booting down their computers before and after clocking in to the company's timekeeping software program each shift.[1] Of the additional plaintiffs who opted-in to the collective action, thirteen remain, for a total of 15 plaintiffs (collectively, "Cadena").[2]

In the prior appeal, we reversed the district court's earlier grant of summary judgment to Connexx. *Cadena I*, 51 F.4th at 834. *Cadena I* concluded that the time call-center employees spent booting up computers is compensable under the FLSA because it is an "integral and indispensable" part of their duties, *id.* at 840; noted that in *Sandifer*, the Supreme Court "questioned the application of the *de minimis* doctrine to the FLSA," *id.* at 841; and declined to resolve whether the doctrine continues to apply, *id*. We remanded the case for the district court to determine whether: (1) the time spent shutting down computers is compensable; (2) the time spent booting up or shutting down computers was de minimis such that Connexx is not liable for payment of overtime wages for that work under the FLSA; and (3) Connexx had no knowledge of the overtime work and therefore is not liable for that alternative reason. *Id*. We observed in *Cadena I* that the second and third questions

---

[1] They also alleged various violations of Nevada law, not at issue in this appeal.

[2] The 15 remaining plaintiffs are Cariene Cadena, Andrew Gonzales, Donna Alford, Brandon Cadena, Judith Cummings, Danielle Curley, Clarissa Dix, Diana Giraldo, Kevin Kinyon, Kenya Mills, Richard Ortiz, Dawn Pratt, Rossalind Saxton, Nathan Schavers, Steven Somodi. The district court dismissed two other opt-in plaintiffs, Marguerite Sigmon and Krystal Paynther, because it concluded that their claims were not common to the collective action. Cadena does not challenge those dismissals on appeal.

"involve disputed factual questions that the district court should decide in the first instance on remand." *Id*.

On remand, the district court granted summary judgment to Connexx once again based on the prior record and briefing, declaring that there was no need for additional proceedings. The court concluded the de minimis doctrine is applicable to this case notwithstanding *Sandifer*. The court further held Connexx not liable for payment of overtime wages because, assuming that both boot down and boot up time are compensable, the time spent on those tasks was de minimis under the three-factor test established in *Lindow*, 738 F.2d at 1063. Because the time spent was de minimis, the court concluded, Connexx was not liable for overtime wages. In the alternative, the district court held that to the extent any of the time in question was not de minimis, Connexx is not liable because Cadena had not met her burden of establishing that Connexx failed to pay for that overtime, in light of the evidence indicating the plaintiffs could request adjustments to their time records.

## DISCUSSION

We review the district court's grant of summary judgment de novo. *See Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1074 (9th Cir. 2016). We "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact." *Id.* (quoting *Balint v. Carson City,* 180 F.3d 1047, 1050 (9th Cir.1999) (en banc)). We find a genuine issue of material fact "when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010)).

"Whether an activity is excluded from hours worked under the FLSA . . . is a mixed question of law and fact." *Cadena I*, 51 F.4th at 835 (quoting *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004)). "'The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law.'" *Id.* (quoting *Ballaris*, 370 F.3d at 910).

## I. The Continued Validity of the De Minimis Doctrine.

Our initial question is whether the de minimis doctrine remains good law after the Supreme Court's 2014 decision in *Sandifer*. The *Sandifer* Court held that the de minimis doctrine was not applicable to 29 U.S.C. § 203(o), a provision of the FLSA concerning time spent changing clothes or washing.[3]  *See Sandifer*, 571 U.S. at 233–34.[4] *Sandifer* did not disturb our Circuit's applicable case law on the de minimis doctrine in the context of an FLSA claim

---

[3] "In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."  29 U.S.C. § 203(o).

[4] Connexx argues that Cadena waived her challenge to the *de minimis* rule by failing to argue it below.  We disagree.  The district court considered (and rejected) the argument that *Sandifer* rendered the *de minimis* doctrine invalid.  "[B]ecause the district court considered this issue, it is not waived on appeal."  *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1108 (9th Cir. 2016).

under § 207, so the doctrine remains applicable in the circumstances here.

The Supreme Court first recognized the de minimis doctrine in its 1947 decision in *Anderson*. The *Anderson* Court held that, for purposes of calculating overtime under the FLSA, time that employees spent walking to and from their work benches at the beginning and end of their shifts was compensable because "the statutory workweek includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *See* 328 U.S. at 690–91. At the same time, the Court stated:

> We do not, of course, preclude the application of a de minimis rule where the minimum walking time is such as to be negligible. The workweek . . . must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Id.* at 692.

The year after the decision in *Anderson*, Congress responded by passing the Portal-to-Portal Act, 61 Stat. 84 (codified as amended at 29 U.S.C. §§ 251–62). That Act

provided that under the FLSA, employers need not pay for certain activities performed before or after a worker begins or concludes the worker's "principal activity or activities," 29 U.S.C. § 254(a). *See Cadena I*, 51 F.4th at 836. Under the Portal-to-Portal Act, unless such activities are compensable by contract or custom, 29 U.S.C. § 254(b), employers are not liable for failure to pay employees for "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or "(2) activities which are preliminary to or postliminary to said principal activity or activities," *id.* § 254(a).

Relying on *Anderson*, we held in *Lindow* that, "[a]s a general rule, employees cannot recover for otherwise compensable time if it is *de minimis*." *Lindow*, 738 F.2d at 1062 (discussing *Anderson*, 328 U.S. at 692). *Lindow* established a three-part test for determining whether otherwise compensable time is de minimis, applied it to the facts of the case, and concluded that the time at issue was de minimis. *Id*. at 1062–64. Under *Lindow*, whether work time is de minimis turns on "the regularity of the additional work," "the aggregate amount of compensable time," and "the practical administrative difficulty of recording the additional time." 738 F.2d at 1063.

Since *Lindow*, we have applied the de minimis rule in a variety of FLSA cases. For example, *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), *aff'd on other grounds*, 546 U.S. 21 (2005), concluded that "time spent donning and doffing non-unique protective gear such as hardhats and safety goggles is not compensable" because that time is de minimis. *Id.* at 903–04. Conversely, in *Rutti v. Lojack Corp.*, 596 F.3d 1046 (9th Cir. 2010), we vacated a grant of summary judgment to an employer after holding that there

were triable issues of fact as to whether the time an employee spent uploading data after he returned home from his field work was de minimis. *Id*. at 1056–59, 1061. More recently, in *Corbin*, we held that where, on one occasion, a call-center employee logged into an auxiliary computer program one minute before logging into the employer's time-keeping program, the "one minute of uncompensated time over multiple years of employment" was de minimis and so not compensable. 821 F.3d at 1081–82. And in *Marsh v. J. Alexander's LLC*, 905 F.3d 610 (9th Cir. 2018) (en banc), we recognized that "[t]he allegations that would trigger a FLSA wage violation claim require more than de minimis claims based on seconds or minutes spent." *Id*. at 631. Our decisions in *Lindow*, *Alvarez*, *Corbin*, and *Marsh* each addressed the applicability of the de minimis doctrine to a claim for unpaid wages or unpaid overtime.

*Sandifer*, on the other hand, concerned 29 U.S.C. § 203(o), a provision of the FLSA that allows parties to a collective bargaining agreement to exclude as noncompensable "'time spent in changing clothes . . . at the beginning or end of each workday.'" *See Sandifer*, 571 U.S. at 223–24 (quoting 29 U.S.C. § 203(o)). The workers in *Sandifer* were covered by such a collective bargaining agreement. *Id*. at 223.

*Sandifer* first distinguished glasses, earplugs, and respirators from other items used by steelworkers, like flame-retardant jackets, pants, and hoods, and concluded that donning or doffing the former did not qualify as "changing clothes" under section 203(o), and so was not excludable as noncompensable under that provision. *Id.* The Court then considered whether the time spent putting on these non-clothing items was noncompensable anyway as de minimis. *Id*. Although the district court and court of appeals had

concluded the time was noncompensable under the de minimis doctrine, the Supreme Court disagreed. *Id.* at 224, 234. The Court "doubt[ed] that the *de minimis* doctrine can properly be applied to the present case" because "the statute at issue here," section 203(o), "is *all about* trifles—the relatively insignificant periods of time in which employees wash up and put on various items of clothing needed for their jobs." *Id*. at 234. Because *all* of the time at issue under section 203(o) was minimal, relying on the concept that some amounts of time are too trifling to be compensated did not provide a sensible rule for "*disregard[ing]* the minute or so necessary to put on glasses, earplugs, and respirators" while "*regard[ing]* the minute or so necessary to put on a snood." *Id*.[5] In reaching this conclusion, the Supreme Court did not regard *Anderson* as pertinent to the issue before it, explaining that *Anderson* involved "the context of determining what preliminary activities had to be counted as part of the gross workweek under § 207(a) of the Fair Labor Standards Act." *Id*.

Cadena contends that *Sandifer* brings into question the continued validity of the de minimis rule generally, but we are bound by our Circuit's case law, both pre- and post-*Sandifer*, concerning the de minimis exception. Under *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc), a three-judge panel cannot overrule a prior panel's decision in light of subsequent Supreme Court precedent unless the prior decision is irreconcilable with that Supreme Court

---

[5] Although *Sandifer* concluded the de minimis doctrine was inapplicable in that case, the Court held that, if the vast majority of the time in question was spent "changing clothes," as opposed to putting on and off non-clothes items, then the entire period of time may be excluded under section 203(o). 571 U.S. at 235.

precedent. *See id.* at 900. There is no such irreconcilable conflict here between our de minimis cases and *Sandifer*.

Neither *Anderson* nor *Lindow* nor *Corbin* nor this case involves the specific question at issue in *Sandifer*: whether under 29 U.S.C. § 203(o) the time spent donning or doffing protective gear may be excluded, pursuant to a collective bargaining agreement, from compensable time, or whether that time must be compensated despite a collective bargain provision to the contrary. *See Sandifer*, 571 U.S. at 223–24. *Sandifer*'s reasoning as to why the de minimis rule of *Anderson* is inapplicable to determining the compensability of time spent donning or doffing non-clothing items pursuant to a collective bargaining agreement under § 203(o) was specific to that provision: the Court reasoned that as the donning and doffing time addressed by that section was necessarily very short, Congress would not have intended to apply the de minimis rule to closely related activities not covered by § 203(o). *Id*. at 234.

*Lindow* and *Anderson*—unlike *Sandifer*—have nothing to do with putting on clothing or gear, or with enforcing exclusions in collective bargaining agreements from otherwise compensable time. Instead, those cases, like this one, concern whether time spent on certain work activities before or after a regular shift must be included in the workweek under 29 U.S.C. § 207; there is no collective bargaining agreement addressing payment for the time at issue, nor is there an applicable statutory provision permitting parties to a collective bargain to exclude such time or closely related time. *See Sandifer*, 571 U.S. at 234 (distinguishing *Anderson* on this basis); *see also Lindow*, 738 F.2d at 1059–60.

*Corbin*, decided two years after *Sandifer*, involved a similar question to the one in this case, although it concerned unpaid wages rather than overtime: whether payment for the time spent was not recoverable because it was negligible. *See Corbin*, 821 F.3d at 1079–82. *Corbin* excluded as de minimis the single minute of time spent by a call center employee before initiating timekeeping software. *See id*. at 1081–82; *see also Marsh*, 905 F.3d at 631. As *Corbin* implicitly reflects, *Sandifer* is not irreconcilable with *Anderson*.

Apart from her reliance on *Sandifer*, Cadena contends that the *Anderson* de minimis rule has no statutory basis. She argues that the Portal-to-Portal Act rejected *Anderson* and that Congress expressly excluded specified categories of activities as noncompensable but did not create an exception for de minimis work generally. Were we writing on a blank slate, Cadena's position might find some support in the rule of construction that "[w]here Congress explicitly enumerates certain exceptions to a general [rule], additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *United States v. Smith*, 499 U.S. 160, 167 (1991) (citing *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–617 (1980)). On the other hand, the exceptions in the Portal-to-Portal Act concern *types of activities* and do not address whether some amounts of time—whatever the type of activity—are so minimal as to be noncompensable. *See* 29 U.S.C. § 254(b). Further, Congress chose expressly to overrule a portion of *Anderson*. Given its decision to do so, we would expect that if Congress wished also to overrule *Anderson*'s de minimis doctrine, it would have done so explicitly. In any event, Cadena has pointed to no basis that would allow a three-judge panel to

revisit our precedents on the de minimis doctrine at this juncture.

In sum, *Sandifer*'s rejection of the de minimis rule in a limited statutory context is fully compatible with the continued application of the doctrine outside of that context, including in the circumstances here. As our post-*Anderson* de minimis precedents are not irreconcilable with *Sandifer*, the de minimis rule remains applicable in this Court.

## II.  Did the District Court Correctly Determine that the Time was De Minimis?

To determine whether otherwise compensable time is de minimis under *Lindow*, we consider "the regularity of the additional work," "the aggregate amount of compensable time," and "the practical administrative difficulty of recording the additional time." 738 F.2d at 1063; *see Corbin*, 821 F.3d at 1081. The burden is on the employer to show that the time spent on the activity in question was de minimis. *See Rutti*, 596 F.3d at 1057 n.10.

With respect to the aggregate amount of time involved, courts have awarded relief for claims that, "when aggregated, amounted to a substantial claim," even if the amounts might be "minimal on a daily basis." *Lindow*, 738 F.2d at 1063. As *Lindow* reasoned, "[w]e would promote capricious and unfair results, for example, by compensating one worker $50 for one week's work while denying the same relief to another worker who has earned $1 a week for 50 weeks." *Id*. There is no bright line rule that a particular amount of time is de minimis, although "[m]ost courts have found daily periods of approximately 10 minutes *de minimis*." *Id.* at 1062; *see Rutti*, 596 F.3d at 1058 n.11.

As further explained in *Lindow*, "[t]he *de minimis* rule is concerned with the practical administrative difficulty of recording small amounts of time for payroll purposes." 738 F.2d at 1062 (citing 29 C.F.R. § 785.47).  Under *Lindow*, "[e]mployers . . . must compensate employees for even small amounts of daily time unless that time is so miniscule that it cannot, as an administrative matter, be recorded for payroll purposes."  *Id*. at 1062–63; *see* 29 C.F.R. § 785.47.

*Lindow* applied the de minimis rule to a claim for overtime compensation by Army Corps of Engineers employees for time spent on pre-shift activities such as reviewing a logbook and exchanging information with workers on the previous shift.  *See* 738 F.2d at 1059.  Over the course of three years, the employees "spent an average of 7 to 8 minutes a day reading the log book and exchanging information," but "they did not always perform these duties before their shifts" and "did not regularly engage in compensable activities."  *Id*. at 1059, 1063–64.  Under those circumstances, we recognized that the "plaintiffs' aggregate claim may be substantial."  *Id*. at 1064.  But we concluded that "their claim is *de minimis* because of the administrative difficulty of recording the time and the irregularity of the additional pre-shift work."  *Id*.  Given the lack of regularity and the "wide variance in the amount of pre-shift time spent on compensable activities as opposed to social activities," it would have been difficult for the Corps to record the time spent on compensable pre-shift activities.  *Id*. at 1063–64. *Lindow* concluded that, under those circumstances, the administrative difficulty and lack of regularity outweighed the possibility that the aggregate time spent performing compensable work might be substantial.

In *Cadena I*, Connexx argued that summary judgment was proper because "even if the boot up time is not

preliminary, it is non-compensable under the *de minimis* doctrine." 51 F.4th at 840. *Cadena I* declined to affirm the district court's earlier summary judgment ruling on this alternative basis, holding that the "question[] involve[s] disputed factual questions that the district court should decide in the first instance on remand." *Id*. at 841.

We are concerned that by ruling on this issue on summary judgment on the same record initially before us, the district court appears to have disregarded our holding that disputed issues of fact exist that preclude summary judgment on this issue. *See, e.g.*, *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000) (explaining that a district court's "order issued after remand may deviate from the mandate" only "if it is not counter to the spirit of the circuit court's decision"). The parties have not, however, engaged on this procedural problem. In addition, the earlier opinion did not explain which material facts were in dispute and why. So we proceed to address the *Lindow* analysis on the merits and in detail. Applying the *Lindow* factors here, we again conclude that disputed questions of material fact remain as to whether the claimed time is de minimis.

To begin, with respect to the regularity of the work, Connexx employees performed uncompensated work before *each and every* shift: they had to engage the computer and login before they were able to clock in using the timekeeping software program. "Connexx call center employees cannot perform their principal duties without first booting up their computers." *Cadena I*, 51 F.4th at 839. As the district court found, Connexx "necessarily knew" its workers spent time before each shift engaging the computer before clocking in, given that the timekeeping system was on the computer.

As for shutting down the computers, the parties dispute whether employees were required to ensure that the computers were shut down at the end of every shift. *See Cadena I*, 51 F.4th at 834 n.3, 838 n.4. Although Connexx asserts that the workers were not required to wait for the computer to shut down before they could leave, several workers testified that they were instructed to wait to ensure their computers were completely shut down. Because a reasonable fact-finder could conclude that the employees were required to ensure their computers were shut down at the end of each shift, there is a triable issue of fact as to whether the workers performed off-the-clock work at the end of every shift as well. *See id*.

The district court concluded that the work was irregular because "the occasions when logins or logouts took longer were irregular both in frequency and duration." But that is only partially true: the occurrence of uncompensated work was not irregular in frequency because it happened every shift. And where the work "must be [done] . . . every work day, and appear[s] to be a requirement of [the worker's] employment," we have held that work regular. *Rutti*, 596 F.3d at 1059; *cf. Corbin*, 821 F.3d at 1082 ("Indeed, the scarcity of examples to which Corbin can refer indicates that this practice does not occur with 'regularity.'"). Here, as in *Rutti*, although the amounts of time that each employee spent on start-up or shut-down tasks varied by day, they were required to complete these tasks *every* shift (viewing the evidence in the light most favorable to Cadena). That the amounts of time spent on the activity each day varied concerns the administrative difficulty of recording the time, not the regularity of the work.

Similarly, there is a triable question of fact as to the aggregate amount of time at issue. The evidence reflects that

the amount of time spent booting up and shutting down a computer on a given day varied depending on the processing speed of the computer an employee worked on that day.[6]  As a result, the workers in their testimony generally provided estimated ranges of time spent starting and shutting down their computer, rather than a fixed number or average.  After aggregating boot up and shutdown time, the record reflects that the employees spent anywhere from a few seconds up to thirty minutes per shift on these tasks.[7]

Several workers estimated spending a few seconds up to ten minutes on these activities.[8]  A few workers reported that they spent no more than a few minutes each day on these

---

[6] Cariene Cadena testified to differences in time depending on whether the computer available was an "old desktop[]."  Cummings explained that once the computer was up and running, it took another "[f]ive, ten, fifteen minutes depending on how old the computer was" to clock in. Cummings also described some of the computers as "old and slow."  And Gonzales explained that the time varied depending on the computer.

[7] Some plaintiffs did not work a full 40-hour work week generally or on occasion, or did not work a full 8-hour workday generally or on occasion. For weeks in which a plaintiff did not work more than 40 hours even after the uncompensated time is added in, that plaintiff would not be able to establish entitlement to unpaid overtime wages (Cadena's sole FLSA claim).  We have not excluded testimony by such plaintiffs from our analysis, however, because their testimony is still relevant to the fact question of how long it took to boot up or boot down the call-center computers, particularly given that the workers for the most part shared a pool of computers.

[8] Somodi estimated spending a few moments—up to ten minutes—daily on these tasks.  Cariene Cadena and Mills both estimated spending three to eight minutes daily.  Giraldo estimated spending six to seven minutes daily, sometimes longer.  Saxton estimated spending four to seven minutes daily, and Ortiz estimating spending two to seven minutes daily.

tasks.[9]  Significantly, however, several other employees provided time estimates with a maximum range of over ten minutes per day.  For example, Cummings estimated spending five to thirty minutes total on these tasks each shift, Schavers reported spending "on average" ten to twenty minutes, and Gonzales estimated spending from two to more than twenty minutes.  Dix reported spending one to fifteen minutes on these tasks each shift, and Curley estimated spending six to eleven minutes.  To the extent workers may have spent up to eleven, fifteen, twenty, or even thirty minutes per shift on these tasks, the time cannot be characterized as de minimis.  A reasonable fact-finder could conclude that when all the time is aggregated per employee—factoring in instances when the tasks at issue took ten to thirty minutes, for example, as well as those in which the tasks took a few minutes or less—the total uncompensated time could be "substantial" over time.  *See Lindow*, 738 F.2d at 1064.  Given the varied evidence on how long it took to boot up and shut down the computers each shift, and given that a group of workers was sharing a pool of computers, Cadena has raised a triable issue of fact on the question whether the aggregate amount of time spent by each worker was de minimis.

With respect to the practical administrative difficulty of recording the time, Connexx argues that the district court correctly concluded that it would be too administratively difficult to calculate the boot up and boot down time by comparing the data indicating when employees used a

---

[9] Alford testified to spending "a couple of seconds" up to three minutes each shift.  Brandon Cadena reportedly spent a few seconds to about a minute.  Sigmon testified to a range from about one minute to "a few minutes."

security badge to enter and exit the building with the clock-in or clock-out times on the timekeeping software. Under this approach, the difference between the time an employee entered the building and the time the employee clocked in could be used to approximate the time spent booting up a computer; the difference between the time the employee clocked out and the time that the employee exited the building could be used to approximate the time spent booting down the computer. Connexx relies on evidence in the record that employees sometimes swiped in and out of the building several times before a shift, so the swipe card data may not accurately translate to each employee's boot up or shut down time.[10] But we see no reason that, to improve the accuracy of the estimates, Connexx could not require employees to swipe in immediately before beginning to boot up their computers to clock in, or to swipe out immediately after they boot down. Under such an approach, the time spent booting up or booting down could be estimated based on the time of the badge swipe immediately preceding the clock-in time and the badge swipe immediately following the clock-out.

Alternatively, Connexx could use a non-computer-based method for ascertaining when the employee started and stopped working, as is the case in companies in which the employees' work does not involve logging into a computer. Cadena contends that Connexx could have and should have installed "a separate time clock on the wall of the building like most all other employers do in this day and age so that the timekeeping system was not connected to [a] computer

---

[10] Cariene Cadena testified that from the time she used her "badge to go into the door," it took her a "minute at most" to "get to the computer," suggesting that any walking time was minimal.

terminal."[11]  If a physical punch clock were located near the computer workstations, workers could clock in and out immediately before engaging or after shutting down their computers, and all of the time the employees spend on these tasks would be captured.

Connexx relies on 29 C.F.R. § 785.48(a), which provides that "[t]ime clocks are not required."  But nothing in that regulation precludes time clocks from being considered when determining whether it is impractical to record time for purposes of the de minimis exception.  Connexx further contends that if it did use a time clock,[12] "it would likely be forced to pay employees for noncompensable time activities," such as walking time, going to the restroom, or chatting with coworkers.  Yet the regulation it cites makes clear that if an employer uses a time clock, an employee's "early or late clock punching may be disregarded," and

[11] Contrary to Connexx's suggestion, the time clock argument was not waived.  In district court, Cadena preserved the argument that recording the relevant time is not administratively difficult.  The possibility of using a time clock came up during oral argument in the earlier appeal of this case, so Connexx was on notice of the issue, *see* Oral Argument Video at 34:52, *Cadena v. Customer Connexx*, 51 F.4th 831 (9th Cir. 2022)    (No.    21-16522),    https://www.ca9.uscourts.gov/media/ video/?20220614/21-16522/ (Judge Bybee asking counsel for Connexx whether the employer should "go back to the clock on the wall").  There was no opportunity for further record development or briefing on remand, so Cadena had no chance to address the time clock option in particular on remand.    And Connexx is not prejudiced by our consideration of the time clock argument because it briefed the issue on the merits for this appeal.

[12] Although no physical "punch clock" is used for call center workers, there is evidence in the record that Connexx may use a time clock for other purposes.  Connexx's Policy on "Timecards, the Time Clock, Clocking In and Pay Periods" refers to "2 methods used at" Connexx for timekeeping, one of which is a "time clock."

rounding is permissible. 29 C.F.R. § 785.48(a)-(b). Under Connexx's policy, "[t]ime worked is computed to the nearest quarter hour." Moreover, we are unpersuaded that using a physical punch clock would be more disadvantageous to Connexx than using the timekeeping software, given that under both systems, employees may need to use the rest room, walk to the break room, or speak with a co-worker after clocking in. The only difference between using a physical punch clock and timekeeping software is that the time spent booting up or booting down the computers would be included rather than excluded.

In sum, when the summary judgment record is viewed in the light most favorable to Cadena, the regularity of the work and the lack of practical difficulty in recording the time favor a conclusion that the time at issue is not de minimis. The factor concerning the aggregate amount of time is a closer question, but several employees estimated ranges of time that cannot be considered de minimis over time, particularly given that the work must be performed every shift. Ultimately, it is Connexx's burden to establish that the claimed time was de minimis. *Rutti*, 596 F.3d at 1057 n.10. In light of the genuine disputes of fact as to all three *Lindow* factors, summary judgment to Connexx was improper.

In *Rutti*, we vacated the district court's summary judgment for the employer where there were similar disputes of material fact. *Id.* at 1061. *Rutti* considered the time employees spent sending modem transmissions to the employer after clocking out each day. *Id.* at 1049–50. We reasoned that although recording the time might present an administrative challenge, the other two factors—the aggregate amount of time at issue and the regularity of the work—supported the conclusion that the time was not de minimis. *Id.* at 1058–59. The parties disputed the aggregate

amount of time involved: there was evidence in the record that some employees "spent no more than five to ten minutes" per day on the modem transmissions, but Rutti's contention that the transmissions took fifteen minutes per day was supported by evidence that employees had to "come back and check to see that the transmission was successful," as well as evidence that "there [we]re frequent transmission failures." *Id.* at 1058. We explained that if the work took fifteen minutes a day, the aggregate time involved amounted to "over an hour a week." *Id.* at 1059. "For many employees, this is a significant amount of time and money." *Id.* In addition, the work was required "at the end of every work day." *Id.* As a result, we held "there [we]re material issues of fact as to whether the [time spent on modem] transmissions [was] *de minimis*," precluding summary judgment. *Id.*

In *Cadena I*, we relied on *Peterson v. Nelnet Diversified Solutions, LLC*, 15 F.4th 1033 (10th Cir. 2021), a case involving a closely analogous FLSA claim for time spent by call center workers booting up their computers. *Cadena I*, 51 F.4th at 839–40. *Peterson* reversed a grant of summary judgment based on the de minimis doctrine, holding that the regularity and absence of administrative difficulty in recording the pre-shift time spent booting up computers made work compensable. 15 F.4th at 1049. The Tenth Circuit was unpersuaded that recording such time involved "any 'serious administrative burden.'" *Id*. And it held that "the steady regularity with which the [call center workers] perform these activities weighs heavily against applying the de minimis doctrine." *Id*. The same is true here.

As in *Rutti* and *Peterson*, Cadena has raised triable issues of fact on the question whether the time in question was de

minimis.  Accordingly, we reverse the district court's grant of summary judgment on that basis.

### III.  To the Extent the Claimed Time is Not De Minimis, Did the Plaintiffs Raise an Issue of Triable Fact that They Were Not Compensated for That Time?

The district court granted summary judgment in favor of Connexx on the alternative basis that, for any time that was not de minimis, "employees could and did use punch forms or other means to request their supervisors to adjust their time, even for very small amounts of time."  The district court concluded on that basis that the plaintiffs did not meet their burden of showing Connexx failed to adjust their time when appropriate.

In *Cadena I*, we declined to resolve Connexx's argument that "since it had a procedure for its employees to report additional time, it is not responsible for compensating its employees for unreported time because it did not know the work was being performed."  51 F.4th at 841.  The question, we concluded, raised "disputed factual" issues.  *Id*.  We directed the district court on remand to "decide [those issues] in the first instance."  *Id.*  The district court then proceeded to grant summary judgment in part based on Connexx's time adjustment policy, on the same record as was before us on the first appeal, notwithstanding our determination that there were disputed factual issues.[13]

---

[13] As with the application of the de minimis rule, *supra* at Part II, the district court appears to have disregarded our holding that disputed issues of material fact preclude summary judgment based on the punch claim process.  But again, the parties have not addressed the rule of mandate's

We again conclude that there is a dispute of material fact as to whether, under Connexx's policies, it was possible for employees to be compensated for boot up and shut down work outside the shift hours, even though such work was necessary to boot up and shut down the computers at the required times.  Summary judgment on this alternative basis was therefore improper.

The record contains evidence indicating that, although Connexx required its employees to engage the computer *before* their scheduled start time, it would not pay them for any time between when they began turning on or logging into a computer and the start of the shift.  Time paid at Connexx was rounded to the nearest quarter hour.  And by company policy, "[a]n employee should not clock in more than 7 minutes prior to starting work."  The interaction of these two linked policies meant that, as supervisor Ortiz testified, "it's company policy [that] you can clock in up to seven minutes [before your scheduled start time], but [] you don't get paid for it."  Similarly, supervisor Saxton testified that when reviewing her supervisees' time records, she "was mainly checking to see if an employee was supposed to start at 7:00 that they clocked in at 7:00 *or not more than six* [sic] *minutes before*" because "that's where reprimands or write-ups would come into play."  In other words, by prohibiting employees from clocking in seven or more minutes before their start time, Connexx assured that employees would be paid for time starting when their shift began, not earlier.  The record thus could support the conclusion that Connexx sought to ensure it would not have to pay for *any* minutes

application as to the punch claim issue, nor did the earlier opinion discuss the issue in detail.  We therefore proceed to the merits on this issue as well.

spent before the scheduled start time by disciplining employees for clocking into the timekeeping system seven or more minutes before the scheduled start time.

The record also contains evidence that could support a conclusion that Connexx was aware that its employees were arriving more than seven minutes before their scheduled start times and working during the pre-shift period to engage their computers before clocking in.  Several employees testified that Connexx required each agent to be ready to take calls *at* the scheduled shift start time.  For example, Mills explained that "[t]he instruction was to make sure you were clocked in and ready to go at the start of your shift."  According to Ortiz, "[t]hey wanted you phone ready by the time" the shift started.  As Schavers recounted, "they were very adamant [about] me starting at the start time of my shift and be[ing] on-call and ready because there's callers on the line waiting."  Workers not ready to take calls at the start of their shift were subject to verbal and written warnings and potential termination.

In addition, the record contains evidence that, because it took time to engage the computer before a worker would be ready to take calls, it was not possible for the workers to walk in the door at their scheduled start time and clock-in on time.  As a result, as Saxton explained, Connexx "advised" its workers "to arrive at least ten minutes, [or] five to ten minutes[,] ahead of their clock in time," so that they could "boot up and login appropriately and be clocked in and ready to take their first call by their start time."  And several workers testified that they typically arrived 15 or 20 minutes

before their shifts started to be ready to take calls at the designated time.[14]

Connexx stresses that there was a manual system for adjusting an employee's recorded time (referred to in the record as "punch card claims").  But Cadena presented evidence that under that system, supervisors could not adjust an employee's pay to reflect the individual's actual start time, only the scheduled start time.  The punch card claim process was for situations in which an employee had experienced a *delay* in clocking in *after* the scheduled shift start and so was not able to clock in by that time.  The concern principally addressed by the system, it appears, was whether the employee would be considered late, not whether the employee would be paid for time spent clocking in before the start of the shift.  Further, the director of the call center, Betty Kamaka, indicated in an email to call center workers that the punch claim process was intended for "exceptions," instructing the workers to "please work to reduce these exceptions."  An employee could also be reprimanded for using the punch claim process too frequently.  For example, a supervisor cautioned Gonzales that there were "to[o] many isolated issues from [him] regarding punching in on time," suggesting that the supervisor may need to consider disciplining him.  In addition, Connexx had a policy prohibiting "[w]orking unauthorized overtime," which

---

[14] For example, Saxton "typically" arrived "15 to 20 minutes" before her shift started.  Giraldo "would arrive at least [] 15 minutes early just because we had to get everything going before we were able to clock in."  Mills testified that "if my shift was at 7:00, then I would have to . . . get there at like 6:45 – not even clock in early, just to boot my system up."  Somodi likewise testified that "habitually" he arrived at the call center "15 minutes early" for each shift.  Cummings "always" arrived about fifteen minutes before her scheduled start time.

would have discouraged workers from attempting to use the punch claim process as a means of getting paid for time spent before or after the scheduled shift times.[15]

The district court acknowledged that the record contained evidence that supervisors only adjusted time beginning at the scheduled start time. The court did not recognize, however, that this evidence creates a dispute of material fact as to whether the system for adjusting time permitted workers to receive adjustments for booting up or booting down time outside scheduled work hours, as most workers did to avoid discipline for not being clocked in during the scheduled times. Instead, the district court placed the burden on Plaintiffs to establish "how often" Connexx declined requests to adjust time to reflect boot up or boot down time. But if Connexx had an across the board policy against making adjustments for boot up or boot down time outside the scheduled hours, then the evidence in the record that employees sometimes requested adjustments would not be relevant to the question whether they were paid for the usual boot up or boot down time, which occurred outside scheduled hours. Given the dispute over whether Connexx had a policy against such adjustments, the district court erred in requiring Cadena to provide evidence concerning the denial of specific requests.

In sum, Cadena raised a genuine issue of material fact as to the question whether Connexx allowed employees to be compensated for any time spent before the scheduled start of a shift. As a result, summary judgment was unwarranted on

---

[15] The implication that Connexx would not pay for booting up or booting down time occurring outside of the scheduled shift time is reinforced by evidence that in November 2017, the workers were informed via email that "[e]ffective immediately[,] [] [t]here is no approved overtime."

the ground that the plaintiffs failed to establish that Connexx did not adjust time when requested.[16]

\* \* \*

In light of the several triable issues of material fact precluding summary judgment, we reverse the district court's grant of summary judgment and remand for proceedings consistent with this opinion. On remand, a trial will be necessary to resolve the disputed fact issues.

**REVERSED and REMANDED.**

---

[16] Cadena also contends that the district court's decision contravenes the rule that, under the FLSA, employers may not require employees to request payment for performing work that the employer knows is being performed. *See Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981). *Forrester* explains that the FLSA defines the word "employ" to mean "to suffer or permit to work." *See id.* at 414; 29 U.S.C. § 203(g). Relying on that definition, *Forrester* held that

> an employer who knows or should have known that an employee is or was working overtime . . . cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.

646 F.2d at 414. The *Forrester* rule is clear, but whether the district court held that Cadena was affirmatively required to request payment— as opposed to holding that Cadena did not meet her burden of showing that she was not properly compensated—is debatable. Given our conclusion that summary judgment based on the workers' reliance on the punch claim process was unwarranted, we do not need to, and so do not, resolve that question.